# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| HIL TECHNOLOGY, INC. D/B/A<br>HYDRO INTERNATIONAL,<br><br>              PLAINTIFF<br><br>V.<br><br>ENGINEERING/REMEDIATION<br>RESOURCES GROUP, INC.,<br><br>              DEFENDANT | CIVIL NO. 2:18-CV-78-DBH |

## DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER

In this case, I determine that a forum selection clause in the parties' contractual documents requires me to transfer their lawsuit to the Northern District of California.

### FACTS AND PROCEDURAL HISTORY[1]

The plaintiff is a Maine corporation that offers products and services related to water management and environmental impact. Its principal place of

---

[1] If I were deciding this motion on personal jurisdiction grounds under Rule 12(b)(2), the First Circuit's "prima facie review" standard would apply, which requires record support for factual allegations. Courts in this district use the same "procedural analysis" for Rule 12(b)(2) and 12(b)(3) motions to dismiss for improper venue. BlueTarp Fin., Inc. v. Matrix Const. Co. Inc., 845 F. Supp. 2d 342, 344 (D. Me. 2012), rev'd on other grounds, 709 F.3d 72 (1st Cir. 2013); accord Culebra II, LLC v. River Cruises & Anticipation Yachts, LLC, No. 07-13-P-H, 2007 WL 1657426, at *1 (D. Me. June 4, 2007). Compare 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1352 nn.13-17 and accompanying text (3d ed.) (under Rule 12(b)(3), most courts take well-pleaded factual allegations as true). But I am resolving this case under § 1404(a), not Rule 12(b)(3). The factual standard for § 1404(a) motions is more nebulous. "Several appellate courts have suggested that it is desirable for the district court to make findings specifically relating the evidence upon which it relies to the factors stated in Section 1404(a), although there is no formal requirement that this be done." 15 Fed. Prac. & Proc. Juris. § 844 (4th ed.). Fortunately, there is really no factual dispute here, only disagreement over the legal conclusions to draw.

business is in Maine. Pl.'s Opp'n 2 (ECF No. 8); Purinton Decl. ¶¶ 4-5 (ECF No. 9). The defendant is a California corporation that specializes in environmental remediation and other services. It has no connection to Maine aside from this lawsuit and the events underlying it. Def.'s Mot. 2; Appel Decl. ¶¶ 3-11 (ECF No. 7).

In March of 2017, the California defendant was preparing to bid on an RFP issued by the Stanford Linear Accelerator Center National Accelerator Laboratory (SLAC) to install a hydrodynamic separator unit at the SLAC campus in Menlo Park, California. Def.'s Mot. 2-3; Appel. Decl. ¶¶ 14, 19. The project's specifications were prepared by SLAC's retained engineering firm, Def.'s Mot. 2; Appel. Decl. ¶ 15, and called for the installation of a piece of equipment manufactured and sold only by the Maine plaintiff—its Downstream Defender unit (the Unit). Def.'s Mot. 3; Appel. Decl. ¶¶ 19-20.

On March 21, while the California defendant was still preparing its bid, one of its employees called the plaintiff's regional sales representative (also in California) for a quote on the Unit. Appel Decl. ¶¶ 21-22; Pl.'s Opp'n 3; Purinton Decl. ¶ 7. They called and emailed back and forth over the course of the following week about the details of the Unit. Appel Decl. ¶ 23. On March 27, an employee of the plaintiff in Maine emailed a quote (the Quote or Sales Quote) for the Unit to the California defendant. Appel Decl. ¶ 24; Purinton Decl. ¶ 8; Sales Quote, Purinton Decl. Ex. A (ECF No. 9-1). The Quote included a price for the Unit and another item. Its stated terms included "[p]ayment in accordance with [the Maine plaintiff's] standard Terms and Conditions." But no such terms were

2

actually transmitted with the Quote, Appel Decl. ¶ 24, nor were they linked to or incorporated in the Quote itself.

On May 4, the California defendant emailed the Maine plaintiff that it had won the SLAC bid and that a purchase order (the Order or Purchase Order) would follow later that day, which it did. Appel Decl. ¶ 27; Purinton Decl. ¶¶ 13-15. The Order was for the Unit at the quoted price (and not the other item), was directed to the plaintiff's Maine address, and included the California defendant's "Purchase Order Terms and Conditions." Purchase Order, Purinton Decl. Ex. D (ECF No. 9-4). Those terms included choice-of-law and forum-selection clauses, both in favor of California. Id. ¶ 18. They also specified certain means of acceptance, and attached conditions to that acceptance: "By accepting this purchase order . . . either (a) in writing or (b) by prompt (i) shipment of any goods . . . or (ii) performance of any services . . . [Maine] Seller agrees to sell [California] Buyer the Goods and to perform the Services on this Order's terms and conditions. . . . [California] Buyer hereby rejects any terms and conditions in [Maine] Seller's acceptance that add to, vary from, or conflict with the Terms & Conditions." Id. ¶ 1 (emphasis in original).

On May 5, in response to the previous day's email of the Purchase Order, the Maine plaintiff asked the California defendant if it intended to purchase the other item in addition to the Unit. Purinton Decl. Ex. C (ECF No. 9-3). On May 8, the California defendant responded that it was purchasing only the Unit. Id. The Maine plaintiff emailed back shortly after: "We'll go ahead and get that processed." Id. It did not sign the Purchase Order. Purinton Decl. ¶ 18.

The parties corresponded throughout May, June, and July about the technical details of the SLAC project, especially scheduling and installation of the Unit. Id. ¶¶ 19-23; Purinton Decl. Exs. F, G (ECF Nos. 9-6, 9-7).

On June 28, the Unit's components were physically delivered to the SLAC campus. Compl. ¶ 9 (ECF No. 3-3). On June 30, the Maine plaintiff emailed the California defendant an invoice (the Invoice or Sales Invoice) for the Unit. Purinton Decl. ¶ 24; Sales Invoice, Purinton Decl. Ex. H (ECF No. 9-8). The Invoice said "[y]ou can see our terms and conditions of sale on our website at [URL]." Purinton Decl. Ex. H. Unlike the Quote, the Invoice did not say that payment must be "in accordance with [the plaintiff's] standard Terms and Conditions," Purinton Decl. Ex. A—it simply linked to them. The plaintiff's terms (the Terms or Invoice Terms) contained a forum selection clause in favor of Maine. Invoice Terms, Purinton Decl. Ex. I ¶ 16 (ECF No. 9-9). They also said that the plaintiff's "obligations hereunder are expressly conditioned on Buyer's assent to these terms and conditions." Id. ¶ 2.

On October 17, the California defendant sent the Maine plaintiff a letter refusing to pay for the Unit. Purinton Decl. ¶ 26. The plaintiff eventually sued the defendant in Maine state court for breach of contract, unjust enrichment, and quantum meruit. Compl. ¶¶ 14-36. The defendant removed the case to this federal court and moved to dismiss or transfer the case for lack of personal jurisdiction pursuant to Fed R. Civ. P. 12(b)(2) or 28 U.S.C. § 1631,[2] or in the

---

[2] Section 1631 provides that if a court "finds . . . a want of jurisdiction" in a civil action, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.

4

alternative to transfer it under 28 U.S.C. § 1404(a).³ Notice of Removal (ECF No. 1); Def.'s Mot. 1 (ECF No. 6).⁴

**ANALYSIS**

### *1. Subject Matter Jurisdiction*

The defendant removed the case from Maine Superior Court on the basis of diversity jurisdiction. Notice of Removal ¶ 3 (citing 28 U.S.C. § 1332). The parties are diverse: the plaintiff is a citizen of Maine and the defendant is not. Id. ¶¶ 6, 11-12. The amount-in-controversy requirement is also satisfied. Id. ¶ 13; Compl. ¶¶ 18, 29, 34.

### *2. Venue*

The defendant's motion requests either dismissal or transfer based on lack of personal jurisdiction, or, in the alternative, transfer under 28 U.S.C. § 404(a). I begin and end with the venue question and do not reach the issue of personal jurisdiction.⁵

---

³ Section 1404(a) provides in part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

⁴ The plaintiff's brief "reserves the right to request jurisdictional discovery to determine the extent to which ERRG may have dealings with Maine sufficient to establish general jurisdiction." Pl.'s Opp'n 7 n.1. This is akin to disfavored "'wait and see' pleading," see Kader v. Sarepta Therapeutics, Inc., 887 F.3d 48, 61 (1st Cir. 2018). In any event, because I resolve the motion under 28 U.S.C. § 1404(a), there is no need for jurisdictional discovery.

⁵ "[W]hen there is a sound prudential justification for doing so . . . a court may reverse the normal order of considering personal jurisdiction and venue." Leroy v. Great W. United Corp., 443 U.S. 173, 180 (1979). Here, judicial economy counsels in favor of considering venue first. See Cameron v. Thornburgh, 983 F.2d 253, 257 n.3 (D.C. Cir. 1993) (deciding a venue question first "because it provides an easier resolution of the case"). I note that personal jurisdiction is probably not necessary to order a transfer under § 1404(a). "Most courts conclude that a district court that has subject matter jurisdiction and that is a proper venue may transfer under Section 1404(a) even though it lacks personal jurisdiction over the defendant." 15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3844 n.15 and accompanying text (4th ed.) (collecting cases). But see Albion v. YMCA Camp Letts, 171 F.3d 1, 2 (1st Cir. 1999) (stating that forum non conveniens can never apply in the absence of jurisdiction, section 1404(a) codifies forum non conveniens, and therefore section 1404(a) cannot apply where there is no personal jurisdiction) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504 (1947)). Albion is inapposite here because there is a

5

The Supreme Court has said: "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." Atl. Marine Const. v. U.S. Dist. Court for W. Dist. Of Texas, 571 U.S. 49, 62 (2013). The question therefore is whether the California forum-selection clause is enforceable.

The parties agree that a contract existed between them; they dispute only whether its terms include the California forum-selection clause contained in the defendant's Purchase Order. The answer to that issue depends on when and how the contract was formed and whether it was supplemented under Cal. Com. Code § 2207 (West)[6] by the conflicting Maine forum-selection clause from the plaintiff's later Invoice.

---

difference between deciding a venue question *absent* personal jurisdiction (as Albion apparently prohibits) and doing so *without reaching* the issue of personal jurisdiction. Leroy says the latter practice is acceptable. The Supreme Court has also approved this practice in the context of forum non conveniens (and undermined the language in Gulf Oil relied on by Albion in the process). See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 434 (2007).

Alternatively, transfer would be available under § 1631 if there were no personal jurisdiction here. The parties have not addressed whether the District of Maine is a proper venue; I assume it is under 28 U.S.C. § 1391(b)(2). If it is not, transfer would be appropriate under 28 U.S.C. § 1406(a). "The transfer provision applied—whether Section 1404(a) or Section 1406(a) or Section 1631—generally has little or no effect on the case or the transfer motion itself." 15 Wright & Miller, Fed. Prac. & Proc. Juris. § 3842 n.28 and accompanying text (4th ed.). A number of courts, "recognizing that [transfer] can be achieved either way, find it unnecessary to decide whether § 1404(a), § 1406(a), or § 1631 is the proper vehicle." Id. § 3844 n.15.

[6] The plaintiff cites 11 M.R.S. § 2-207, Maine's version of the so-called "battle of the forms" provision. Pl.'s Opp'n 18. The defendant cites California's version, Cal. Com. Code § 2207 (West), and says California law governs, but notes the language of the two provisions "is materially identical." Def.'s Reply 3 n.2 (ECF No. 10). I agree with the defendant that California law applies. Sitting in diversity, I apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); New England Surfaces v. E.I. du Pont de Nemours & Co., 546 F.3d 1, 9 (1st Cir.), decision clarified on denial of reh'g, 546 F.3d 11 (1st Cir. 2008). Maine uses the Second Restatement approach. State Farm Mut. Auto. Ins. Co. v. Koshy, 995 A.2d 651, 666 (Me. 2010). Under Restatement (Second) of Conflict of Laws § 188 (1971), I conclude that California has the most significant relationship to the transaction: it is the place of performance

In California, forming a contract for the sale of goods requires an offer and an acceptance. Cal. Com. Code § 2206. The offer here was the defendant's Purchase Order.[7] At least two acts constituted acceptance by the plaintiff.

At the earliest, the Maine plaintiff accepted the offer when one of its employees emailed the California defendant on May 8 in response to the Purchase Order that "[w]e'll go ahead and get that processed." Purinton Decl. Ex. C (ECF No. 9-3). The plaintiff points out that it did not sign the Purchase Order, Purinton Decl. ¶ 18. But the Purchase Order by its terms invited acceptance "in writing," not necessarily by signing the Purchase Order document itself. Purchase Order ¶ 1. At the latest, the Maine plaintiff accepted the offer when it shipped the Unit, which arrived in California on June 28, because the Purchase Order also invited acceptance "by prompt [ ] shipment of any goods . . . described on the face of the Order." Id.

Thus, regardless of when exactly the acceptance occurred, a contract had already formed by the time the Maine plaintiff sent its Invoice on June 30. Even if I treat its Maine choice-of-forum clause as a proposed additional term under the Uniform Commercial Code, it does not become part of the contract if "[t]he offer expressly limits acceptance to the terms of the offer;" or if "[n]otification of

---

and the location of the subject matter of the contract. Id. § 188(2)(c)-(d). The other factors are at most neutral; none favors Maine. As the defendant suggests, it may also be that the choice of law makes no difference, since both states have adopted UCC § 2-207. Ionics, Inc. v. Elmwood Sensors, Inc., 100 F.3d 184, 187 n.2 (1997) ("We need not address [choice of law], because the two states have adopted versions of [§ 2-207] that are virtually equivalent."). I am unaware of any relevant differences in how Maine and California apply § 2-207.

[7] Conceivably, the plaintiff's Quote could be the offer, which would make the Purchase Order either a counter-offer or an acceptance under § 2-207. But the plaintiff has effectively conceded that the Purchase Order is the offer. See Pl.'s Opp'n 8 ("[The defendant] sent the Purchase Order to [the plaintiff] in Maine, which began the contract formation process."). If the Purchase Order began the formation process, then the Quote cannot be the offer.

objection to [the additional terms] has already been given or is given within a reasonable time after notice of them is received." Cal. Com. Code § 2207(2)(a), (c). I conclude that both these conditions were met by the California defendant's Purchase Order, which stated that "Seller agrees to sell Buyer the Goods . . . on <u>this</u> Order's terms and conditions" and that "Buyer hereby rejects any terms and conditions in Seller's acceptance that add to, vary from, or conflict with the [Purchase Order's terms and conditions]." Purchase Order ¶ 1 (emphasis in original). "[T]he terms of the offer become part of a contract between merchants if the offer expressly limits acceptance to its own terms." <u>Steiner v. Mobil Oil Corp.</u>, 569 P.2d 751, 754 (Ca. 1977).

The result is that the Maine forum-selection clause did not become part of the contract. Instead, the terms of the Purchase Order control. The Order calls for "all disputes relating to the Order [to be] settled in a court of competent jurisdiction in the State of California." Purchase Order ¶ 18. The United States District Court for the Northern District of California is a court of competent jurisdiction in California. Under <u>Atlantic Marine</u>, contract clauses selecting federal fora are to be given effect under 28 U.S.C. § 1404(a) barring extraordinary circumstances "unrelated to the convenience of the parties." 571 U.S. at 62. The plaintiff has not argued there are any such extraordinary circumstances in this case. Transfer under § 1404(a) to the Northern District of California is therefore appropriate.

**CONCLUSION**

I **GRANT IN PART** the defendant's motion and order the action **TRANSFERRED** to the United States District Court for the Northern District of California. The

defendant's requests to dismiss or transfer the case for lack of personal jurisdiction are **MOOT**.

**SO ORDERED.**

**DATED THIS 14TH DAY OF MAY, 2018**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**